The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
A. The following depositions taken on the dates indicated are a part of the record: Nancy I. Faller, D.O., May 19, 1997; Anthony Burke, M.D., June 10, 1997; Eleanor Talley, R.N., June 24, 1997; and John Shaffer, M.D. on June 25, 1997.
B. The Form 21 Agreement and the Form 26 Supplemental Agreement, having been approved by the Industrial Commission on 10 August 1995, are incorporated herein by reference as if fully set forth.
C. The parties' May 1997 Pre-trial Agreement is also incorporated herein by reference.
D. The parties stipulated to "Proceedings before the Industrial Commission" (Stipulation #1) and two (2) volumes of medical and related records of plaintiff relating to this claim (Stipulation #2 and #3).
 RULINGS ON EVIDENTIARY MATTERS
All objections raised in the depositions are ruled upon in accordance with applicable law and this Opinion and Award.
Defendant's motion to strike plaintiff's treating physician Burke's 11 December 1996 answers to certain written question submitted to him by plaintiff's counsel is denied.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. The plaintiff, a 32-year old man, has a ninth grade education. He began employment in 1980 and worked at various unskilled manual labor jobs through 1992, including 1989-90 when he was in prison in Bunn, N.C.
2. On 6 May 1992 defendant hired plaintiff as a part-time freight handler or checker at its freight terminal located in Lexington, N.C. where plaintiff earned $7.20 per hour. He worked as a part-time checker until 9 August 1993. During this period plaintiff's hours worked each day and days worked each week varied from week to week.
3. On 9 August 1993 defendant hired plaintiff as a regular or full-time checker at the pay rate of $10.03 per hour with a guaranteed minimum work week of at least 42 hours.
4. Plaintiff's normal and usual duties as a checker involved loading and unloading freight weighing up to approximately 120 pounds, frequent bending, and constant standing or walking.
5. On 18 September 1993 the plaintiff sustained the admittedly compensable injury by accident ("original accident") when he accidentally fell out of the back of a trailer while carrying a load of boxes which blocked his view. He lost his step and fell forward and downward off the trailer's edge about 3 or 4 feet. The middle of his body or trunk area landed directly on a steel dock plate buckle. His left leg or left foot was still on the trailer's edge when he landed with most of his body weight on the dock plate buckle. He injured and felt immediate severe pain in his right groin area, perineal area, testicles, penis, buttocks between his legs, and lower abdominal area and the end of his spine. One box hit and injured his left ear drum.
6. Under G.S. § 97-2(5), plaintiff's "employment in which he was working at the time of the injury" was that of a first year full-time or regular checker and not that of a part-time checker. A first year checker receives only 85 percent of the $11.80 per hour paid to regular checkers. In the six-week period plaintiff worked for defendant-employer as a first year full-time checker, that is, from 9 August through 18 September 1993, his average weekly wage was $455.13. The employer in September 1993 reported to the Commission that plaintiff was in fact working 9 hours a day, 5 days a week as a full-time checker. Plaintiff's hourly pay in September 1993 was $10.03. The undersigned under G.S. § 97-2(5) rejects the first three methods for calculating plaintiff's average weekly wages as being unfair and finds that plaintiff in September 1993 probably would have worked 45 hours each week at $10.03 per hour and would be earning $475.95 per week were it not for his injury by accident. Plaintiff's average weekly wage as of 18 September 1993 was $475.95, yielding a compensation rate of $317.32.
7. By 6 October 1993 plaintiff returned to work for defendant at his regular pre-injury work duties for a few hours when he experienced a return of severe disabling pain in his perineum and scrotal areas, radiating into his right groin area. On 11 October 1993 Salisbury urologist Lee Johnson, M.D. examined plaintiff and felt he had a small right inguinal hernia which caused his groin and testicular pain. He referred plaintiff to Salisbury general surgeon Dr. Anthony Burke.
8. On 12 October 1993 Dr. Burke noted plaintiff's straddle injury at work with extensive bruising of his perineum, and a recurrence upon plaintiff's return to work of severe right lower quadrant or groin pain, radiating into his right testicle. On examination Dr. Burke noted resolving bruises on plaintiff's penis and scrotum. He found a bulging in the right inguinal canal consistent with a direct traumatic hernia. On 19 October 1993 Dr. Burke operated on plaintiff to repair a right inguinal hernia. Plaintiff's disabling groin, inguinal and testicular pain improved following this surgery. Plaintiff's hernia was caused by his original accident.
9. On or about 29 November 1993 plaintiff again returned to work at his pre-injury work duties for the employer as a full-time checker.
10. On 14 March 1994 plaintiff returned to Dr. Burke complaining of a return of the severe right groin pain and right testicular pain that he had experienced prior to the above surgery.
11. On 29 March 1994 Dr. Burke examined plaintiff and found no evidence of a recurrent hernia that would explain his symptoms. Dr. Burke then referred plaintiff to pain specialist Dr. W. Gary Shannon of Rowan Memorial Hospital in Salisbury.
12. On 29 March 1994 Dr. Shannon learned from plaintiff that he lifted heavy freight at work for the employer. Plaintiff told Dr. Shannon that in early March 1994 while at work for defendant a load which he was carrying shifted, causing a return of severe pain in plaintiff's right groin area in or near the incisional area where his right inguinal hernia was repaired. Plaintiff's March 1994 recurrent severe right groin pain or right inguinal pain radiating into his right testicle was a result of his original accident. Dr. Shannon provided trigger point injections which provided some relief from this pain.
13. In the period April 1994 into January 1995 plaintiff continued working as a checker despite recurrent episodes of right groin and testicular pain which followed the path of his inguinal nerve.
14. By 18 January 1995 plaintiff's right groin pain and testicular pain became so severe that plaintiff again became totally disabled.
15. Following consultation with Dr. Burke, plaintiff on 24 January 1995 underwent a second surgery which he hoped would improve his recurrent disabling severe right groin or right inguinal pain and testicular pain. This surgery involved removal or excision of the entrapped inguinal nerve located in plaintiff's right groin area. At surgery, there was no evidence of a recurrent hernia.
16. Following this second surgery, plaintiff's pain improved so that by on or about 28 March 1995 he was again able to return to his regular work duties for defendant despite residual groin and/or inguinal pain.
17. On or about 13 September 1995 plaintiff's right groin and inguinal pain and right testicular pain from his original accident again became disabling. On 26 September 1995 Dr. Burke again referred plaintiff to a pain specialist, Dr. Bumgarner, at Rowan Memorial Hospital for trigger point injections. In September and October 1995 Dr. Bumgarner provided plaintiff with ilioinguinal nerve blocks and trigger point injections which provided some relief from plaintiff's recurrent right groin and right testicular pain and allowed plaintiff to again return to work activities for defendant in October 1995.
18. Due to plaintiff's recurrent severe right groin, inguinal and testicular pain, Dr. Burke referred plaintiff to Salisbury neurosurgeon Dr. Mark A. Lyerly who evaluated plaintiff on 8 December 1995. Dr. Lyerly opined that plaintiff's chronic pain from his original accident was intrinsically in his nerves and would not be improved by any further surgery. He referred plaintiff to North Carolina Baptist Hospital Pain Clinic in Winston-Salem for medical management of his chronic pain.
19. On 21 December 1995 plaintiff requested that defendant or its adjusting agent agree to pay for medical treatment by pain specialists at Forsyth Memorial Hospital or Piedmont Institute of Pain Management. Defendant refused plaintiff's request.
20. On 23 January 1996 plaintiff returned to Dr. Burke complaining of recurrent severe right groin pain radiating into his right testicle. Dr. Burke agreed with Dr. Lyerly that referral to a pain clinic was the best approach to treat plaintiff's pain.
21. On 25 January 1996 defendant had plaintiff evaluated at the High Point Regional Hospital Pain Management Center by Dr. Anthony Russell who felt plaintiff suffered from a chronic pain syndrome, mood disturbance and sleep insomnia secondary thereto. He recommended a full pain management evaluation to help treat plaintiff's chronic pain syndrome.
22. Plaintiff's pain inhibited his ability to function or continue working to the point that he again became totally disabled due to his chronic pain from his original accident starting on or about 23 January 1996.
23. On 31 January 1996 plaintiff, now a resident of Davie County, N.C., went to the Davie County Hospital Emergency Room seeking treatment for his right inguinal and right testicular pain. He was treated there by anesthesiologist and pain specialist, Dr. Nancy I. Faller, D.O. of the Piedmont Institute of Pain Management.
24. On or about 2 February 1996 Dr. Burke, at plaintiff's request, referred plaintiff to pain specialist Dr. Faller for pain management treatment of his chronic right groin, right inguinal and right testicular pain.
25. Dr. Faller's various pain management treatments in the period starting in January 1996 and continuing through at least April 1997 have provided significant relief to plaintiff from his chronic severe right groin, right inguinal and testicular pain. The undersigned approve plaintiff's choice of Dr. Faller and Piedmont Institute of Pain Management to assume plaintiff's medical care as part of this claim.
26. While Dr. Faller's treatments have provided plaintiff with pain relief in his right groin and testicular areas, these treatments have resulted in some pain in other areas such as plaintiff's posterior/superior iliac spine area and S2 nerve root area. All of Dr. Faller's pain management treatments to plaintiff are a result of his original accident.
27. On 14 April 1997 Dr. Faller authorized plaintiff's return to part-time light duty work activities where he is able to change positions frequently, take breaks so he can walk around at least every hour, no prolonged periods of sitting or standing, no bending or balancing, and occasional lifting of objects weighing up to 20 pounds. There was no evidence that the defendant offered plaintiff any work within his restrictions. Plaintiff has made reasonable, but unsuccessful efforts to obtain work on his own. Therefore, as a result of the injury by accident, plaintiff has been unable to earn wages with the defendant or in any employment since 23 January 1996 and continues to be temporarily and totally disabled.
28. In May 1996 plaintiff's counsel notified the Commission and defendant that he had agreed to represent plaintiff in this claim. There was considerable delay of about 3 or 4 months before plaintiff's counsel received copies of the Commission-approved Forms 21 and 26 from defendant or the Commission.
29. On 18 October 1996 plaintiff through counsel served his motion under G.S. § 97-25 seeking Commission approval of treatment to plaintiff by pain specialist Dr. Faller and an evaluation by chiropractor Sides.
30. Under the circumstances present here, plaintiff's October 1996 motion seeking Commission approval of treatment by Dr. Faller was made within a reasonable time after plaintiff's beginning treatment with Dr. Faller in January 1996, particularly in light of defendant's rejection of plaintiff's 21 December 1995 request to defendant to voluntarily agree to pay for treatment by Dr. Faller.
31. There was insufficient evidence to establish the plaintiff suffers from depression secondary to his chronic pain syndrome secondary to his accident or would benefit from a psychiatric evaluation. No doctor has recommended psychiatric treatment to date. There was no evidence to establish that plaintiff would benefit from further chiropractic treatment.
32. There was no evidence to establish that plaintiff has reached maximum medical improvement from his 18 September 1993 accidental injuries. He is in need of additional treatment by Dr. Faller, and Dr. Faller's treatment is reasonably required to effect a cure, give relief and tend to lessen the period of plaintiff's disability.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since plaintiff's employment in which he was working at the time of his 18 September 1993 injury by accident was that of a first year regular full-time checker for defendant-employer, his average weekly wage as of 18 September 1993 was $475.95 yielding a compensation rate of $317.32. N.C. Gen. Stat. § 97-2(5) and G.S. § 97-29.
2. Plaintiff is entitled to compensation benefits in the amount of $317.32 per week starting 18 September 1993 for all periods as contained in defendant's hearing exhibit number 4, "Indemnity Payments," with defendant receiving a credit for all disability compensation payments made to plaintiff as stated in the said exhibit. Further, as a result of the injury by accident, plaintiff has been temporarily and totally disabled since 23 January 1996 and is entitled to compensation at the rate of $317.32 for that period and continuing. N.C. Gen. Stat. § 97-29.
3. Since the Commission grants plaintiff's motion to approve Dr. Nancy I. Faller and Piedmont Institute of Pain Management to assume his medical care, defendant shall pay for the medical treatment provided plaintiff by Dr. Faller and for all tests and medication prescribed for plaintiff by Dr. Faller. N.C. Gen. Stat. § 97-25; G.S. § 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to counsel fee hereinafter allowed, defendant shall pay disability compensation benefits to the plaintiff in the amount of $317.32 per week starting 18 September 1993 for all periods as contained in defendant's hearing exhibit number 4, "Indemnity Payments," with a credit for all disability compensation payments made to plaintiff as stated in the said exhibit.
2. Subject to counsel fees hereinafter allowed, the defendant shall pay disability compensation benefits to plaintiff in the amount of $317.32 per week for the period beginning 23 January 1996 and continuing weekly thereafter until further order of the Industrial Commission, with a credit for all disability payments made for any period after 23 January 1996.
3. A reasonable attorney's fee in the amount of 25 percent of the disability compensation benefits payable herein is hereby approved for plaintiff's counsel. Defendant shall withhold 25 percent of the accrued compensation due plaintiff and pay the same directly to plaintiff's counsel. Defendant shall withhold every fourth disability compensation benefit due plaintiff in the future and pay the same directly to plaintiff's counsel.
4. Defendant shall pay all medical compensation, including all treatment by Dr. Faller or Piedmont Institute of Pain Management, and all tests and medication prescribed by her for treatment of plaintiff's injury by accident giving rise to this claim in amounts as approved by the Industrial Commission when submitted on proper forms to the Commission through defendant's adjusting agent.
5. Defendant shall pay the costs, including expert witness fees as follows: (1) to Dr. Faller, $350.00; (2) to Dr. Burke, $350.00; and (3) to Dr. Shaffer, $150.00.
 ORDER
Plaintiff's motion to order attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is hereby, DENIED. However, in the discretion of the Commission panel $1500.00 is awarded Plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN JR. CHAIRMAN
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER